**INDIANA DEPARTMENT OF REVENUE, INHERITANCE TAX DIVISION, Appellant (Petitioner Below),**

v.

**ESTATE of Ray H. FLANDERS, Appellee (Respondent Below).**

**No. 2–579A126.**

Court of Appeals of Indiana, Second District.

July 30, 1980.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellant.

Campbell, Kyle & Proffitt, Carmel, for appellee.

SHIELDS, Judge.

June 13, 1978 the Circuit Court of Hamilton County issued an order approving the determination of state inheritance taxes in the estate of Ray H. Flanders (Estate).[1] The Indiana Department of Revenue, Inheritance Tax Division (Department) filed a Petition for Rehearing, Reappraisement, and Redetermination of Inheritance and Transfer Tax on September 7, 1978,[2] alleging error in the exclusion of certain *inter vivos* transfers of real estate made by Ray H. Flanders (Ray) within two years of his death. A second petition was filed by Department October 16, 1978[3] alleging error in the valuation of real estate owned by decedent at his death and seeking reappraisal. Hearing was held on both petitions October 30, 1978, and on December 4 and 5, 1978 judgments were entered, respectively, against Department on both matters.

On appeal, Department raises two issues:

(1) Whether the trial court's decision that transfers of real estate within two years of decedent's death were not made in contemplation of death was supported by sufficient evidence;

(2) Whether the trial court erred in denying reappraisal of decedent's four-tenths undivided interest in real estate encumbered by a ten-year lease prohibiting partition.

We affirm.

The record discloses the following facts: Ray and Marie Flanders (Ray and Marie) owned a large farm operation in Hamilton County as tenants by the entireties. Their sons, Harold, Robert, and Jim (Sons) lived and worked on the farm since their youth, drawing a percentage income from the farm operation but having no ownership interest in the farm.

In 1960 Ray retired from actual farm labor but continued to receive 100% of the income from the "home farm" (230 acres farmed and maintained by Sons) and 50% of the remaining farm operation income.

Marie died intestate July 19, 1976, her interest in the farm passing to the survivor, Ray. September 9, 1976, after discussing with Sons their desire for, and expectation of, an ownership interest in the farm due to their efforts and expenditures in operating the farm and, after conferring with his lawyer as to the income tax consequences of such transfers, Ray (1) conveyed to each son by warranty deed an undivided one-half interest in a parcel of real estate constituting approximately one-third of the farm and filed federal gift tax returns thereon; (2) entered into a conditional sales contract with each son and the son's wife for the remaining one-half undivided interest in their respective one-third parcels for consideration of $252,790, of which he forgave $52,790 as a gift; and (3) executed his will in which he bequeathed his equity in each conditional sales contract to the contract purchaser. Ray was age eighty-two (82) at the date of the transactions.

December 30, 1976, Ray, now desiring to regain some land ownership, entered into agreements with each son and son's wife to terminate their conditional sales contract, in consideration for which Ray agreed to convey to each son and the son's wife an

1. Department's brief states an Order Determining Value of Estate and Amount of Tax was signed on June 12, 1978. We find no such order in the record, but have before us a court entry on June 13, 1978 approving the determination of taxes in the estate of Ray H. Flanders.

2. IC 6–4.1–7–1 (Burns Code Ed.) provides in pertinent part:

"A person who is dissatisfied with an inheritance tax determination made by a probate court with respect to a resident decedent's estate may obtain a rehearing on the determination. To obtain the rehearing the person must file a petition for rehearing with the probate court within ninety [90] days after the determination is made."

3. IC 6–4.1–7–2 (Burns Code Ed.) provides in pertinent part:

"A person who is dissatisfied with an appraisal approved by a probate court with respect to a resident decedent's estate may obtain a reappraisal of the property interest involved. To obtain the reappraisal, the person must file a petition for reappraisal with the probate court within one [1] year after the court enters an order determining the inheritance tax due as a result of the decedent's death."

additional one-tenth interest in their respective parcels of real estate. Pursuant to this agreement, Ray executed warranty deeds on December 29, 1976, conveying to each son individually the additional one-tenth interest. October 18, 1978 each son deeded his one-tenth interest to himself and his wife as tenants by the entireties.

Through the rescission, Ray obtained a four-tenths undivided interest in the entire farm, which he then leased for a period of ten years to Sons and their wives, such lease providing for an annual rental base of $38,400, a cost-of-living rent adjustment, and a waiver of any right to partition the property.

Ray died June 18, 1977. The real estate as a whole was appraised at $1500 per acre but discounted to $1000 per acre value, due to the character of the ownership interest (an undivided interest) and the encumbrance of the ten year lease. Ray's four-tenths interest was therefore determined using a $1000 per acre valuation.

## I

Indiana subjects to inheritance tax transfers of property made by decedent in contemplation of death. IC 6–4.1–2–1(a)(2) (Burns Code Ed.). "A transfer is presumed to have been made in contemplation of the transferor's death if it is made within two [2] years before his date of death. However the presumption is rebuttable." IC 6–4.1–2–4(b) (Burns Code Ed.).

■ The Department challenges the sufficiency of Estate's evidence to rebut the presumption of gift in contemplation of death. On appeal, we will not reweigh the evidence nor judge the credibility of witnesses, but will affirm if the judgment is supported by evidence of probative value. *Foreman v. State ex rel. Dept. of Nat. Resources*, (1979) Ind.App., 387 N.E.2d 455, 463.

■ Department raises factors in support of a determination the *inter vivos* transfers were taxable: old age of the donor, no history of previous gift giving, execution of will on the date of the gift, disposition to the natural objects of decedent's bounty, short period of time from date of gift to date of death, size of gift in proportion to decedent's total estate. While Department is correct in asserting these factors as relevant considerations, no one factor is determinant and Estate may overcome such factors by evidence of living motives. *U. S. v. Wells*, (1931) 283 U.S. 102, 117, 118, 51 S.Ct. 446, 451, 452, 75 L.Ed. 867, (age alone is not a decisive test, proximity in time of gift and death may be overcome by lifetime motives, transfers to objects of decedent's bounty may express lifetime motives); *American Fletcher National Bank and Trust Company v. U. S.*, 441 F.2d 470, 472 (7th Cir. 1971) (simultaneous execution of will and property transfer is insufficient to overcome evidence of living motives).

■ The essence of the "in contemplation of death" determination is decedent's state of mind toward death. *U. S. v. Wells, supra*. The courts employ two inextricably related points of analysis: (1) objective facts from which state of mind may be inferred, and (2) subjective motives for the transfer: testamentary motives (distribution in anticipation of death and/or for the purpose of avoiding death taxes) or living motives (distribution for purposes associated with life).

*Conway's Estate v. State*, (1918) 72 Ind. App. 303, 315, 120 N.E. 717, 720, is the foundational case in Indiana, defining "in contemplation of death" as it relates to the decedent's state of mind:

> "The words 'in contemplation of death' as used in inheritance tax statutes, *do not refer to that general expectation of death entertained by all persons, but they do refer to that expectation of death which arises from such bodily or mental conditions, irrespective of the cause in any particular case*, which prompts persons to dispose of their property to those they deem entitled to their bounty.
>
> "Those words, when employed in taxation statutes, are not restricted to the technical meaning of such phrases when applied to gifts causa mortis, but are given a reasonable and liberal interpreta-

tion, which tends to make effectual such taxation laws without destroying the right of the owner of the property to make an absolute gift of the same.

"Gifts, causa mortis, come within the provisions of the statute, and likewise gifts inter vivos made in contemplation of death." (emphasis added).

Federal cases dealing with gifts in contemplation of death pursuant to the pre-1976 Tax Reform Act,[4] *U. S. v. Well. supra* ; *American Fletcher National Bank and Trust Co. v. United States, supra; Commissioner of Internal Revenue v. Gidwitz' Estate,* 196 F.2d 813 (7th Cir. 1952); and the Indiana case of *State v. Bower,* (1978) Ind. App., 372 N.E.2d 1227, emphasize the transferor's motive.

Estate presented evidence from which it was reasonably inferred that Ray did not have an expectation of death (in the narrow or general sense of the word) but, rather, living motives for the transfers: his good physical and mental health, the absence of recent or prolonged illness, the absence of depression or strong emotional response to his wife's death, the continued life of his two sisters, his desire to be relieved of business and management worries, his desire to discharge moral obligations and reward the efforts of his children, and his desire to reduce his income taxes and provide for his future financial security. Further, Estate offered testimony that Ray never expressed concern for, nor even an awareness of, estate taxes.

█ We conclude the record contains substantial evidence from which the trial court could infer living motives for the transfers, such motives being the product of a mind focused on life rather than death.

## II

Department contends error in the denial of its second Petition for Rehearing, Reappraisement and Redetermination of Inheritance and Transfer Tax in which it sought reappraisal of Ray's four-tenths undivided interest in the farm pursuant to IC 6–4.1–7–2—6–4.1–7–4 (Burns Code Ed.). IC 6–4.1–7–2, 3, and 4 read in pertinent part:

IC 6–4.1–7–2:

"A person who is dissatisfied with an appraisal approved by a probate court with respect to a resident decedent's estate *may* obtain a reappraisal of the property interest involved. To obtain the reappraisal, the person must file a petition for reappraisal with the probate court within one [1] year after the court enters an order determining the inheritance tax due as a result of the decedent's death. However, if the original appraisal is fraudulently or erroneously made, the person may file the reappraisal petition within two [2] years after the court enters the order." (emphasis added).

IC 6–4.1–7–3:

"When a reappraisal petition is filed under section 2[6–4.1–7–2] of this chapter, the probate court *may* appoint a competent person to reappraise the property interests transferred by the resident decedent under taxable transfers. An appraiser appointed by the court under this section has the same powers and duties, including the duty to give notice of the appraisal and the duty to make an appraisal report to the court, as the county inheritance tax appraiser. The appointed appraiser is entitled to receive an amount fixed by the court and approved by the department of revenue as compensation for his services. After the probate court certifies to the county treasurer the amount of compensation due the appointed appraiser, the county treasurer shall pay the appraiser from county funds not otherwise appropriated." (emphasis added).

IC 6–4.1–7–4:

"(a) After the appraiser, *if any, appointed* under section 3[6–4.1–7–3] of this

---

**4.** 26 U.S.C. (I.R.C. 1954) § 2035 (amended 1976) and its fore-runners presume gifts made within three years of death are made in contemplation of death, but such presumption is rebuttable. While the 1976 Tax Reform Act amended I.R.C. § 2035 to be a conclusive presumption, the pre-1976 federal case law is relevant to our determination.

chapter files his appraisal report, the probate court shall redetermine the inheritance tax due with respect to the property interests transferred by the resident decedent. In making the redetermination, the court shall follow the same procedures it is required to follow under sections 9, 10, and 11 of IC 6–4.1–5[6–4.1–5–9—6–4.1–5–11] when making an original inheritance tax determination." (emphasis added).

The language in these statutes is discretionary:[5] IC 6–4.1–7–2 (may obtain a reappraisal), IC 6–4.1–7–3 (may appoint a competent person to reappraise), IC 6–4.1–7–4 (*if* any appointed under section 6–4.1–7–3), and, therefore, it is within the discretion of the trial court to grant or deny reappraisal. Accordingly, our standard of review on appeal is abuse of discretion. *Elder v. City of Jeffersonville*, (1975) 164 Ind.App. 422, 427, 329 N.E.2d 654, 657, quotes the standard established by the Indiana Supreme Court for abuse of discretion:

" . . . an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *McFarlan v. Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 12 N.E.2d 752; *Town of Portage v. Clifford* (1970), 254 Ind. 443, 260 N.E.2d 566."

The only issues raised by Department are (1) the appraiser's use of a farm valuation graph in the appraisal, and (2) the appraiser's fair market valuation of the real estate.

The inclusion of the farm valuation graph is without significance since the testimony explained it was not used for this particular appraisal but for federal estate tax purposes. Our concern is whether the trial court's denial of the Petition for Reappraisal of Ray's four-tenths undivided interest in real estate encumbered by a ten-year lease with no right of partition based on a $1,000 per acre valuation is erroneous and contrary to logic.[6]

Pursuant to IC 6–4.1–5–2 (Burns Code Ed.) property is to be appraised at its "fair market value as of the date of decedent's death." "Fair market value" is what a willing buyer, under no compulsion to buy, would pay a willing seller, under no compulsion to sell. *Second National Bank of Richmond v. State*, (1977) Ind.App., 366 N.E.2d 694, 696.

The record discloses evidence supporting the reduced value to a willing buyer of a fractional interest in real estate encumbered by a ten-year lease: inability to control the real estate due to a minority interest, inability to alienate the property in fee simple for ten years, uncertainty as to a partition of the total farm at completion of lease.

A treatise on the appraisal of property for different legal purposes, J. Bonbright, The Valuation of Property (1st ed. 1937) page 707, relying primarily on New York law but with general applicability, discusses the reasoning for a low valuation of fractional interests: expense of partition suit, limited market for properties of that nature, and possibility of hostile majority interest. As to the valuation of property subject to leases, Bonbright finds some evidence that such property will not sell as well as if it were unencumbered by a lease.

Department's contention that Sons' inheritance under Ray's will of his undivided

5. The word "may," under statutory construction, is generally interpreted to mean discretionary rather than mandatory. *Sherrard v. Board of Commissioners of County of Fulton*, (1972) 151 Ind.App. 127, 130, 278 N.E.2d 307, 309. Additionally, the Indiana Supreme Court's holding in *Indiana Dept. of Revenue Inheritance Tax Division v. Callaway's Estate*, (1953) 232 Ind. 1, 110 N.E.2d 903, that a *mandatory* statutory provision for court appointment of reappraiser upon the request of the tax board of commissioners was unconstitutional as a Legislative usurption of the judiciary's power to make final adjudications, buttresses our position that the current reappraisal statute is not mandatory. Further, the language of IC 6–4.1–7–3 (Burns Code Ed.) makes it clear that an appraiser might not be appointed by the court, necessarily implying that it is within the court's discretion to grant reappraisal.

6. Department does not contest the $1500 per acre valuation for the unencumbered real estate.

interest in the land and the lease as tenants in common means "the waiver of partition rights . . . in the lease would never be enforced by the sons against themselves" is not supported by the evidence. The lease is held by the sons and their spouses and covers an undivided four-tenths interest in the entire farm real estate. The ownership interest is varied: an undivided one-tenth interest in a specified third of the farm is held by each son and his wife; each son individually owns two undivided interests— an undivided one-half interest in a specified third of the farm, and a one-third undivided interest in four-tenths of the entire farm. This intricate pattern of undivided ownership interests, compounded by the spouses' interest in the lease more extensive than their ownership interest, is susceptible to conflicting reasonable inferences as to whether the parties would or would not enforce the waiver of partition rights.

We conclude the trial court's determination was not erroneous or contrary to logic on the facts presented and was, therefore, not an abuse of discretion.

We affirm in all aspects.

BUCHANAN, C. J., and SULLIVAN, J., concur.