STATE EX REL. MCGONIGLE ET AL. v. MADISON
CIRCUIT COURT, SMITH, JUDGE.

[No. 30,481. Filed October 21, 1963.]

2. Acts 1905, ch. 169, §218, p. 584; 1927, ch. 132, §11, p. 411; 1937, ch. 123, §1, p. 702.

404

*William Byer* and *William L. Peck,* both of Anderson, for relators.

PER CURIAM.—The relators have filed a verified petition which asked first that a writ of mandate be issued against the respondent, mandating it to name Arthur A. Osborn as Special Judge in Cause No. 63-513 in the respondent court pursuant to a motion for a change of judge. The petition further asked

that this court "make all proper and equitable orders in the premises which can be made under the law[1] and equity to guarantee to the relators and all other 8,000 qualified voters of the annexed area of Anderson Township to the City of Anderson the right to vote in the general [city] election on November 5, 1963.

The motion for change of judge was filed on September 26, 1963; striking from the record of prospective judges was completed on September 27, 1963, leaving the name of the Honorable Arthur A. Osborn, to be named as special judge in said cause.

The petition before us was filed on October 4, 1963.

Pursuant to relators' said petition, this court issued an alternative writ of mandate requiring the respondent to appoint the said Honorable Arthur A. Osborn in said action, or to show cause why he had not done so, on or before October 11. On the latter date, the respondent filed in this court an entry to the effect that the trial court "pursuant to the Alternative Writ of Mandate issued by the Supreme Court of the State of Indiana . . . now appoints the Honorable Arthur Osborn, Judge of the Grant Superior Court as Special Judge in this case." The order is dated October 9, 1963.

Under these circumstances no issue remains to the mandate of the court with regard to the appointment of the special judge in the cause which was the first part of relators' prayer for relief.

However, the second aspect of relators' prayer for relief that this court "make all proper and equitable orders in the premises which can be made under the law and equity to guarantee to the relators and all other eight thousand (8,000) qualified voters of the annexed area of Anderson Township to the City of

1. Acts 1937, ch. 6, §2, p. 39 [§2-4721, Burns' 1946 Repl.].

Anderson the right to vote in the general [city] election on November 5, 1963," remains in issue.

On October 10, 1963, relators filed their supplemental petition in which they note that the respondent had, on October 9, appointed the Honorable Arthur A. Osborn as Special Judge pursuant to the order of this court, but that said special judge had 10 days in which to appear and qualify to try said cause, and that "after Ten days' time it will be too late for said special judge to set said cause for hearing, and determine the same prior to November 5, 1963, the date of said general election." Relators further cite the fact that "if said judge should fail or refuse to qualify that there would be no opportunity for the appointment of another special judge to try this cause in time for the some 8,000 voters to vote."

Relators in their supplemental petition, further state: "That said respondent has delayed action in this matter so that it now becomes impossible for a trial court to render equity and justice in this cause and in the cause pending in the trial court." Because of said facts, these relators earnestly request this court to make a finding and judgment as requested in relators' original petition, and certify the same to the Clerk's office of the Madison Circuit Court requiring the defendants therein to prepare for said election."

As authority for such action, relators rely upon §2-4721, Burns' 1946 Repl., which provides in part as follows:

"In the event any court, or judge thereof, . . . *shall be unable to act for any reason,* the Supreme Court of Indiana is hereby empowered, upon petition therefor, to grant such relief, in place thereof and shall certify its order to such court, or judge thereof, . . ." [Our emphasis.]

Relators in said supplemental petition request this court to "decide said cause on its merits and mandate said defendants [in the trial court] to prepare for said election, . . . and for all other proper relief in the premises."

Thereafter, on October 17, relators filed their second supplemental petition, supported by a supplemental transcript of the record in Cause No. 63-513 in the Madison Circuit Court stating that the Honorable Arthur A. Osborn, Judge of the Superior Court of Grant County, had declined to qualify as judge in said cause.

Relators further state that it would be impossible at this late date to procure a special judge in time for him to consider and determine said cause in the Madison Circuit Court and to grant the equitable relief sought against the defendants in order that the approximately 8,000 qualified voters who reside in that part of Anderson Township recently annexed to the City of Anderson be entitled to vote in the general city election to be held on November 5, 1963.

Relators' prayer for relief in said second supplemental petition is substantially the same as that asked in their first supplemental petition. Notice of the filing of said second supplemental petition has been served upon all attorneys who appear of record for all the defendants in said cause No. 63-513 in the trial court on October 17, 1963, but said attorneys have filed no response or objections in this court to these proceedings.

There are two basic issues which this court must consider in determining its decision with regard to the action sought by the relators:

First, does this court have authority to grant the relief prayed, and secondly, do the facts presented warrant the exercise of this extraordinary remedy?

With regard to the first issue, we look to the Indiana Constitution, Article 7, §4, which provides:

"The Supreme Court shall have jurisdiction, co-extensive with the limits of the State, in appeals and writs of error under such regulations and restrictions as may be prescribed by law. It shall also have such original jurisdiction as the General Assembly may confer."

Furthermore, the Indiana Constitution, Article 1, §12, provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

In implementation of this constitutional guarantee that "Justice shall be administered . . . completely, and without denial; speedily, and without delay," the legislature enacted a law in 1881, which was amended in 1899, [Acts 1899, ch. 233, §1, p. 537 (§3-2101, Burns' 1946 Repl.)] to provide; in part:

"Restraining orders and injunctions may be granted by the Supreme Court in term-time, when necessary and proper for the due exercise of the jurisdiction and powers of such court, . . . and by the circuit courts in their respective counties in term-time, or by the judges thereof in vacation; or if such judges be absent from their circuits, or by reason of sickness *or other cause be unable or incompetent to hear and determine the granting of a temporary injunction* or restraining order, then any such judge of an adjoining circuit may hear and determine the granting of such temporary injunction or restraining order, and the regular presiding judge in the county where the petition was filed shall hear and determine whether such injunction or restraining order shall be made permanent, . . ." [Our emphasis.]

Later, in 1937, the legislature, in implementation of said constitutional guarantee, also enacted §2-4721, Burns' 1946 Repl., *supra*. To our knowledge this court has not heretofore been called upon to either construe or exercise the authority granted by §2-4721. However, it is to be noted that the reasons stated for this extraordinary procedure in both the above cited statutes are almost identical. The 1899 Act (§3-2101) is made applicable in event the judge for "other cause be unable or incompetent to hear and determine the granting of a temporary injunction." In the 1937 Act [§2-4721], authority for this court to act in the place of the trial judge is conditioned on the fact that "the . . . judge . . . shall be unable to act for any reason, . . ."

In construing the above section of the Acts of 1899 [§3-2101, *supra*], this court in the case of *State ex rel. McClellan* v. *Jay Cir. Ct. etc.* (1954), 233 Ind. 39, 43, 116 N. E. 2d 511, stated:

> "It seems to us that a judge who has been disqualified by filing of an affidavit for change of judge has been rendered incompetent by an 'other cause' within the meaning of the statute [Burns' §3-2101]. . . . "

In that case, this court further held that the judge of an adjoining circuit court had authority under the statute to issue a temporary injunction or restraining order and to enforce that order, so long as the emergency which gave rise to its authority exists.

Upon the same principles which were considered decisive in the *McClellan* case, *supra,* it reasonably follows that in event of the unavailability of a ▪ circuit court judge to exercise jurisdiction in a particular cause of action by reason of a change of venue having been filed in such action, and when no special judge is named for seven days, or the

special judge thereafter selected declines to qualify in an emergency matter, this court not only had the authority but the duty to provide such equitable remedy as is necessary in order that "Justice shall be administered . . . *completely, and without denial; speedily, and without delay,*" as guaranteed by Art. 1, §12, *supra.*

Clearly, then, in a proper case, where a judge of the circuit court is unable "to act for any reason [§2-4721, *supra*]," including the fact that a change of judge has been taken in said cause, and the substantial rights of a large number of citizens are involved, and the time-limitation involved does not permit the opportunity of selecting a special judge to hear and determine a cause in order that such citizens may exercise their right of franchise, this court may, in such a cause, grant the injunctive relief where it appears from the record before us that the parties petitioning are entitled to such relief.

We next consider the question as to whether the petitioners are entitled to the injunctive relief which they seek.

The facts giving rise to the issue herein presented are stated in the verified pleading filed herein and by the transcript in Cause No. 19724 in the Appellate Court, in which cause this court denied transfer on September 3, 1963.

On June 18, 1957 the Common Council of the City of Anderson passed an ordinance annexing all of Anderson Township in that city, except the incorporated areas therein of Edgewood, River Forest, County Club Estates, and Woodlawn Heights, which were all incorporated areas outside the city of Anderson and inside said township at said time.

On September 12, 1961, the Superior Court of Madison County, Indiana, denied an appeal filed and presented by the remonstrators to said ordinance, and dismissed said remonstrance as being insufficient in numbers of signatures thereon and valuation of property owned by remonstrators.

Thereafter remonstrators appealed the judgment of the trial court to the Appellate Court and, on May 24, 1963, in Cause No. 19724, said court affirmed the judgment of the trial court and thereafter denied a petition for rehearing.

On September 3, 1963, this court denied a petition to transfer said cause to this court.

City ordinances, like statutes, are presumed to be valid and constitutional until adjudged to the contrary after a hearing and determination by a court of competent jurisdiction and final judgment is entered thereon.

"[A] statute on the books at any given time, not judicially declared unconstitutional or invalid,[1] is presumed to be valid[2] until the contrary clearly appears;[3] . . ." I. L. E. Constitutional Law §39, Ch. 3, p. 314.

---

1. *Felker* v. *Caldwell* (1919), 188 Ind. 364, 123 N. E. 794.

2. *Inheritance Tax Div.* v. *Estate of Callaway* (1953), 232 Ind. 1, 110 N. E. 2d 903; *Dept. of Financial Institutions* v. *Holt, etc.* (1952), 231 Ind. 293, 108 N. E. 2d 629; *Richmond Baking Co.* v. *Dept. of Treasury* (1939); 215 Ind. 110, 18 N. E. 2d 778; *Cox* v. *State* (1932), 203 Ind. 544, 181 N. E. 469;*Zoercher* v. *Agler* (1930), 202 Ind. 214, 172 N. E. 186, 70 A. L. R. 1232, 202 Ind. 214, 172 N. E. 907;

3. *Archer* v. *Cith of Indianapolis* (1954), 233 Ind. 640, 122 N. E. 2d 607; *State* v. *Clason* (1938), 213 Ind. 461, 12 N. E. 2d 750, 13 N. E. 2d 307; *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 191 N. E. 158; *State* v. *Martin* (1923); 193 Ind. 120, 139 N. E. 282, 26 A.L.R. 1386; *Powell* v. *State* (1923), 193 Ind. 258, 139 N. E. 670; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469; *State* v. *Denny* (1889), 118 Ind. 382, 21 N. E. 252; *Robinson* v. *Schenck* (1885), 102 Ind. 307, 1 N. E. 698.

On September 16, 1963, a demand in writing was made by the relators on the Election Board of Madison County, to prepare for the general election in the city of Anderson on November 5, 1963, and to include therein the annexed area to said city by said ordinance, whereupon relators were informed that the majority members of the board considered that the people in the annexed area were not entitled to vote.

On September 25, 1963, relators filed their action in the Madison Circuit Court, the same being Cause No. 63-513, alleging that an emergency existed; that the Madison County Election Board, the city and county officials, be required by temporary mandatory injunction to perform their duties necessary to the conduct of said election.

On September 26, the respondent Carl T. Smith, regular judge of the Madison Circuit Court, having theretofore indicated his preference not to hear said cause, a change of venue from the judge was filed by relator herein as plaintiff in said action. On said date, under authority of §3-2101, *supra,* relators went to the judge of the adjoining circuit court, the Honorable Robert T. Caine, and obtained a temporary restraining order, and temporary mandatory injunction, without notice, restraining the defendants in said cause from further delay in preparing for said election, and ordering said defendants to prepare for said election forthwith.

Later, the same day [September 26], respondent sustained said motion for change of judge and, on the following day, after a process of striking, the name of Arthur A. Osborn remained as the special judge to try said cause. However, because of a controversy as to the right of one of the defendants in the action to appear and strike the name of one of the persons

submitted as the panel from whom to select a judge, the respondent judge did not name the special judge until October 9, in compliance with the alternative writ of mandate of this court.

Thereafter, as stated in relators' second supplemental petition, and supported by a transcript of the record in said cause, on October 16, 1963, the special judge appeared and declined to qualify, leaving insufficient time to select another judge who could consider the cause and issue the orders necessary to make possible the inclusion of the voters of Anderson Township in the election of November 5, 1963.

Were the eight thousand registered voters, who are residents of the area annexed to the city of Anderson, entitled to vote in the November 5th election? In determining this question, we consider the facts of the case and the pertinent constitutional, statutory, and case-law, of which we take judicial knowledge.

The Indiana Constitution, Art. 2, §2, in clear and concise language, states in part:

"In all elections . . . every citizen of the United States, of the age of twenty-one years and upwards, who shall have resided in the State during the six months, and in the township sixty days, and in the ward or precinct thirty days immediately preceding such election, shall be entitled to vote in the township or precinct where he or she may reside."

Burns' Indiana Statutes, §29-4309, 1949 Repl., reads in part:

"In all municipal elections, no other qualification shall be required of any voter than such as are made necessary in general elections under the constitution and laws of the state."

However, we also take judicial knowledge of §29-3503, Burns' 1949 Repl., from which it may be contended that the residents of said annexed area are not entitled to vote, notwithstanding the above constitutional and statutory guarantees. The pertinent part of said section [§29-3503] is as follows:

> "That the boundaries of any city are extended prior to March 1 before a city primary or *prior to September 1* before a city election and such boundaries have not been rearranged into city precinct then the voters within such extended boundaries shall be permitted to vote, if otherwise qualified, in any city primary or city election in the precinct in which they have their residence the same as though the precinct boundaries in which they have their residence shall have been rearranged to include them in a city precinct in accordance with the above provisions and their votes at such city primary or city election shall be counted and included in the canvass of the votes cast in such city primary or city election." [Acts 1949, ch. 25, §7, p. 43.]

On the basis of the above cited statute, it might be contended that the residents of the said newly annexed area of the city of Anderson are not entitled to vote because the judgment of said annexation was not final until September 3, 1963, when this court denied transfer of the cause from the decision of the Appellate Court which, on May 24, 1963, denied rehearing of a decision confirming the judgment of the trial court which dismissed the remonstrance on September 12, 1961.

It is not necessary to a decision upon this issue that we determine whether the judgment of annexation became final upon the date of the denial of transfer by this court, the date of the denial of rehearing by the Appellate Court, or the date of the judgment in the trial court. The date of September 1, as pro-

vided by §29-3503, *supra*, is not controlling of the case, under the circumstances here presented.

As stated in the case of *Board of Election Commissioners, etc.* v. *Knight* (1918), 187 Ind. 108, 116, 117 N. E. 565, 117 N. E. 650:

> "[T]he right of franchise is a political privilege of the highest dignity which can emanate only from the people, either in their sovereign statement of the organic law or through legislative enactment which they have authorized."

As stated in the case of *Gougar* v. *Timberlake et al.* (1897), 148 Ind. 38, 40, 46 N. E. 339:

> "Judge Cooley, in his Principles of Constitutional Law, p. 248, declares that 'participation in the suffrage is not of right, but it is granted by the state on a consideration of what is most for the interest of the state. Nevertheless, the grant makes it a *legal right* until it is recalled, and it is protected by the law as property is.' . . . " [Our emphasis.]

The right of franchise is a political privilege of the highest dignity which can emanate only from the people, and is reverently and emphatically enshrined in the sovereign statement of the organic law of the people. The privilege cannot be abridged or denied by any board or agency created by the legislature, or through direct legislative enactment, except as such limitation upon the privilege is authorized by other provisions within the organic law of the state. There are no provisions within our constitution which expressly authorize this limitation upon the right of franchise as guaranteed in Article 2, §2 of the Indiana Constitution, *supra*.

Furthermore, if §29-3503, *supra*, is construed as purporting to grant the right to vote to persons in ter-

ritory annexed prior to September 1 and thereby denying the same right to persons living in areas annexed subsequent to September 1, it would be subject to the constitutional prohibition against the class legislation. No substantial basis is known to exist which, under the constitutional guarantee [Art. 2, §2] would grant the right of franchise to certain registered voters within the corporate limits of a city, and deny to others within the city the same right, so long as both met with the constitutional requirements expressly granted to all citizens.

It may be contended that annexation of territory by a city after September 1 presents a problem with respect to the establishment of the necessary orderly conduct of the election and the newly annexed territory. However, the constitutional provisions, regarding the right of franchise, provide ample time for the establishment of precincts and councilmanic districts within the city so long as a period of thirty [30] days exists, during which time territory formerly outside the city can be either rearranged or re-established within the city for election purposes.

The right of franchise may not be denied to any citizen who had resided in the state for six months, within the township for 60 days, and within the city precinct in which the city election is involved for 30 days. Rather than deny the right of franchise to the citizens of a city upon unequal basis in order to accommodate the convenience of those responsible for making possible the right of franchise, such persons must act in a manner so as to accommodate the express provisions of the constitution, where it is possible to do so.

In the instant case there was more than a 60 day interval between the denial of transfer by this court

[September 3] and the date of the election [November 5]. The defendants in the court below had ample time, and still have time, to perform the duties imposed by law with respect to the establishment of precincts and councilmanic districts in said annexed area and to conduct an election therein as part of the city of Anderson.

A final question is presented, as to whether a temporary mandatory injunction is a proper remedy under the Indiana code of procedure for compelling the performance of a statutory duty by public officials.

We know of no statutes which expressly either authorize or prohibit such procedure. However, this court in the case of *Coleman* v. *City of Gary* (1942), 220 Ind. 446, 454, 44 N. E. 2d 101, stated:

> "The Jasper Circuit Court is a court of general jurisdiction and as such has jurisdiction of actions for mandatory injunctions. §3-201 [sic] [§3-2101] Burns' 1933 [1946 Repl.], §1601, Baldwin's 1934."

Furthermore, we are aware that any statutes, or decisions of this court, upon this subject must be consistent with and conform to the constitutional requirement that:

> "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. *Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay.*" [Our emphasis.] Art. 1, §12, *supra*.

West's Indiana Law Encyclopedia, Vol. 12, *Equity*, Section 3, at page 269, provides:

"*Absence of precedents*. The absence of precedents presents no obstacle to the exercise of the jurisdiction of a court of equity, and to ■ the award of relief in a proper case, it being the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties. Such a court may well feel itself justified in applying a recognized principle under circumstances where it seems never to have been applied before.

As stated by the Supreme Court in Dodd v. Reese, 1940, 'the jurisdiction of a court of equity does not depend upon the mere accident of the court having in some previous case, at some distant time granted relief under similar circumstances. If it were so, equity would not have grown and developed.' "

West's I. L. E., Vol. 12, *Equity*, Section 31, page 287, states, "equity will not suffer a wrong to be without a remedy." Equity acts specially, and will insist upon acting, at such time as will afford relief with the least inconvenience or injury to others. And at page 288, equity regards substance rather than form. "Equity will disregard mere forms, and will not permit a substantial right to be defeated by the interposition of merely nominal or technical distinctions."

We have carefully examined and considered the verified pleadings and the transcript of the record filed in this case and have taken judicial knowledge of such matters related to this proceedings as are properly before us.

After such consideration, for the reasons hereinabove stated it is ordered, adjudged and decreed by the court that the defendants in Cause No. 63-513 in the Madison Circuit Court, being the case of:

CHARLES E. McGONIGLE
WARREN R. ELLSWORTH
VICTOR E. NOLAND
DOROTHY L. ADAMS
RALPH C. AMBROSE
HARRY R. ALLEY
           Plaintiffs

            v.

MADISON COUNTY, INDIANA ELECTION
    BOARD
EUGENE CREAGMILE, Secretary, Madison County,
    Indiana Election Board
DONALD MILLER, Member, Madision County,
    Indiana Election Board
HAROLD J. ANDERSON, Member, Madison
    County, Indiana Election Board
CITY OF ANDERSON, MADISON COUNTY,
    INDIANA
        RALPH R. FERGUSON, Mayor
        ROLAND MAINE, Member, Common Council
        TEMAS DILLARD, Member, Common Council
        MAE ROBERTS, Member, Common Council
        JESSE HUNTZINGER, Member, Common
           Council
        HARRY BLAKE, Member, Common Council
        LAWRENCE MUNSELL, Member, Common
           Council
        ALICE REHM, Member, Common Council
        VON COCHRAN, Member, Common Council
        HERBERT ATKINSON, Member, Common
           Council
        WILSON G. ANDERSON, City Controller
        MARIE SYLVESTER RIGGS, City Clerk
JESSE BIDDLE, Commissioner of Madison
    County
HAROLD FOUST, Commissioner of Madison
    County
RALPH McCORD, Commissioner of Madison
    County
JOSEPH H. ARMINGTON, Madison County
    Auditor
EGBERT M. HOOD, Treasurer of City of Ander-
    son and of Madison County, Indiana
           Defendants

be and they are hereby ordered and directed to perform the duties imposed upon each of them by law to the end that all qualified voters within the city of Anderson shall have an opportunity to vote in the general election to be held on November 5, 1963, according to designated wards and precincts, including all qualified voters who have acquired residence in said city by reason of the aforesaid annexation of territory by said city of Anderson.

The Clerk of this court is ordered to forthwith deliver a certified copy of this opinion and mandatory injunction to the Clerk of the Circuit Court of Madison County and additional copies to the Sheriff of Madison County, who is ordered to serve the same forthwith upon each of said defendants herein, or secure waiver of such service by their attorneys of record, and said sheriff is ordered to make his return to this court.

Jackson, J., concurs in result.

NOTE.—Reported in 193 N. E. 2d 242.